E-FILED
Wednesday, 30 September, 2026 09:04:55 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE N.E.C.A./LOCAL 145 I.B.E.W. PENSION PLAN, AS COLLECTION AGENT FOR ALL FRINGE BENEFITS, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:23-cv-04115-SLD-RLH |
| THADDEUS GUIZAR, Individually and d/b/a THADDEUS H. ELECTRIC, INC., | ) | |
| Defendant. | ) | |

ORDER

Before the Court are Plaintiff Trustees of the N.E.C.A./Local 145 I.B.E.W. Pension Plan, as Collection Agent for all Fringe Benefits's ("N.E.C.A.") renewed motion for default judgment, ECF No. 27, and motion to withdraw its request for permanent injunction, ECF No. 29. For the reasons that follow, the renewed motion for default judgment is GRANTED IN PART and DENIED IN PART and the motion to withdraw request is GRANTED.

**BACKGROUND**[1]

On May 8, 2025, the Court partially granted N.E.C.A.'s Motion for Default Judgment Compelling Audit, ECF No. 14, and found Defendant Thaddeus Guizar, Individually and d/b/a, Thaddeus H. Electric, Inc. ("Guizar") liable for violating the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. *See* May 8, 2025 Order 5, ECF No. 15. The Court ordered Guizar to submit to an audit by June 8, 2025, in order for N.E.C.A. to accurately ascertain the amount of unpaid contributions and other damages owed from January 1,

[1] For a more detailed factual background, review the Court's May 8, 2025 Order, ECF No. 15.

2019, to December 31, 2019. *Id.* N.E.C.A.'s renewed motion for default judgment based on the audit's results was due by July 8, 2025. *Id.* N.E.C.A. requested an extension of time because Guizar had not yet complied with the audit, *see* July 8, 2025 Status Report, ECF No. 16, which the Court granted, setting a new renewed motion for default judgment deadline of September 8, 2025, *see* July 9, 2025 Text Order. That deadline came and passed without action from either party and the Court *sua sponte* extended the renewed motion for default judgment deadline to October 8, 2025. Sep. 24, 2025 Text Order. On October 9, 2025, N.E.C.A. entered a motion for an order to show cause for Guizar's failure to sit for the audit. ECF No. 17. The Court granted the motion and ordered Guizar to appear at a show cause hearing on December 9, 2025. Nov. 5, 2025 Order, ECF No. 18. Guizar did not appear, although his counsel did, and the Court stayed proceedings. Dec. 9, 2025 Min. Entry.

After various delays, on March 31, 2026, N.E.C.A. entered a status report indicating that the audit still had not occurred. Mar. 31, 2026 Status Report, ECF No. 22. The Court resumed contempt proceedings and set another show cause hearing for Guizar's failure to comply with an audit on April 22, 2026. Apr. 6, 2026 Text Order, ECF No. 23. At the hearing, the Court ordered Guizar to sit for an audit on May 13, 2026. Apr. 22, 2026 Minute Entry, ECF No. 24. After no action from either party for over two months after the show cause hearing, the Court directed N.E.C.A. to file a renewed motion for default judgment based on the audit by July 25, 2026. June 25, 2026 Text Order, ECF No. 26. N.E.C.A. timely filed its renewed motion for default judgment, which requested, among other things, injunctive relief. Renewed Mot. Default J. 4. The Court directed N.E.C.A. to file additional briefing supporting its request for a permanent injunction and, in response, it filed the pending motion to withdraw its request for a permanent injunction. *See generally* Mot. Withdraw Request.

## DISCUSSION

### I. Legal Standard

A court may enter judgment against a defaulted party under Federal Rules of Civil Procedure 55(b)(2). A default judgment establishes that a defendant is liable to a plaintiff on each cause of action alleged in a complaint. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982). Upon a party's default, the Court takes as true the well-pleaded allegations of a complaint related to liability, but the allegations regarding the amount of damages are not assumed to be accurate. *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). The Court must conduct an inquiry to determine the amount of damages with reasonable certainty, *id.*, and must hold a hearing unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," *Dundee Cement*, 722 F.2d at 1323 (collecting authority). Furthermore, in accounting for damages, the Court is bound by the complaint as Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." "This rule serves to protect defendants who choose to default, relying on the damage ceilings contained in plaintiffs' prayers" rather than expending funds to contest a lawsuit. *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008) (quotation marks omitted).

### II. Analysis

#### a. Liability

The Court has already found Guizar liable as a matter of law for violating ERISA. *See* May 8, 2025 Order.

**b. Damages**

The Court finds it unnecessary to hold a hearing on damages because N.E.C.A. has requested specific amounts and submitted documentary evidence and affidavits in support of its requests. The amount of damages must be "capable of ascertainment" from documentary evidence or affidavits. *See Dundee Cement*, 722 F.2d at 1323. Thus, the Court will only grant the relief requested by N.E.C.A. if it is supported by N.E.C.A.'s documentary evidence. *See e360 Insight*, 500 F.3d at 602–03.

**i. Unpaid Contributions**

In an ERISA civil enforcement action, when judgment is entered in favor of the ERISA fiduciary, the Court shall award the fiduciary "unpaid contributions." 29 U.S.C. § 1132(g)(2)(A). N.E.C.A. claims that Guizar has unpaid contributions in the amount of $23,810.68 for the period from January 1, 2019, through December 31, 2019. Renewed Mot. Default J. ¶ 10; Audit Inspection Finding 1, Renewed Mot. Default J. Ex. A, ECF No. 27-1. In the complaint, N.E.C.A. never identified the particular funds for which it was seeking unpaid contributions. *See* Compl. ¶ 3, ECF No. 1 (identifying N.E.C.A. as "Trustees of certain Taft-Hartley pension funds"); *id.* ¶ 6 ("Defendant agrees to make certain and timely fringe benefit payments, including pension fund contributions. . . ."). The only information identifying which funds might be at issue is the allegation that Guizar's obligation stems from the Collective Bargaining Agreement ("CBA") for the International Brotherhood of Electrical Workers, Local 145, and a Letter of Assent for The Quad Cities Chapter of the National Electrical Contractors Association. *Id.* ¶ 5. However, the audit attached to the renewed motion for default judgment breaks down the unpaid contributions into categories. Audit Inspection Finding 3. Based upon this categorization, it appears N.E.C.A. is requesting unpaid contributions for the Administrative

Fund, Annuity, H&W, JATC, LMCC, NEBF, NECA, Pension, and Work Assessment. *Id.* The Court has reviewed the CBA and is satisfied that N.E.C.A. is entitled to recover each of these categories.[2]

The renewed motion for default judgment notes that Guizar "participated [in the audit] in good faith" but "he could not provide substantial additional documents other than applicable tax returns." Renewed Mot. Default J. ¶ 9. Even if the audit's accuracy was impacted by the lack of documentation, it is acceptable under the circumstances to use Guizar's tax returns to estimate the amount of unpaid contributions. *See* 29 U.S.C. § 1059; *see, e.g.*, *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 162 (D.D.C. 2009) ("In light of the defendant's failure to provide periodic reports or allow the plaintiffs to access the defendant's books and records, the court accepts the plaintiffs' estimation of delinquent contributions as both reasonable and as accurate as possible under the circumstances."); *Greater St. Louis Constr. Laborers Welfare Fund v. D & H Concrete, Inc.*, No. 4:05-CV-2352 (CEJ), 2008 WL 2437419, at *2 (E.D. Mo. June 12, 2008) (permitting an ERISA plaintiff to estimate the unpaid contributions because the defendant failed to provide information necessary for a more precise determination); *Plumbers & Pipefitters Loc. 99 Fringe Benefit Funds v. Watkins*, No. 05-1223, 2008 WL 2357663, at *3 (C.D. Ill. June 5, 2008) ("[T]he Court will allow an evidentiary inference based o[n] the Funds' audit to make a just and reasonable estimate of damages." (quotation marks omitted)). The Court is satisfied that

[2] *See* Residential Wiring Agreement § 4.07, Mem. L. Supp. Audit Ex. A, ECF Nos. 8, 8-1 (requiring contributions to the Administrative Maintenance Fund, which the Court presumes to be the Administrative Fund in the audit); *id.* § 4.03(a), (b) (requiring contributions to the Annuity); *id.* § 4.02 (requiring contributions to the Health & Wellness Fund, which the Court presumes to be the H&W in the audit); *id.* § 4.04, 4.05 (requiring contributions to the national and local LMCC funds); *id.* § 4.01 (requiring contributions to NEBF); *id.* § 4.08 (requiring contributions to NECA service charge, which the Court presumes to be the NECA in the audit); *id.* § 4.03(c), (d) (requiring contributions to the pension); *id.* § 5.14 (requiring contributions to JATC); *id.* § 4.06 (requiring contributions to Working Dues, which the Court presumes to be Work Assessment).

the evidence before it supports an award of the unpaid contributions requested; therefore, N.E.C.A. is awarded $23,810.68 in unpaid contributions.

**ii. Liquidated Damages and Interest**

N.E.C.A. also asks that the Court award it $8,867.36 in interest and $4,762.13 in liquidated damages. Renewed Mot. Default J. ¶¶ 11–12. Under ERISA, the Court must award a successful fiduciary (1) interest on the unpaid contributions and (2) an amount equal to the greater of either (a) interest on the unpaid contributions or (b) liquidated damages provided for under the plan in an amount not in excess of twenty percent of the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(B)–(C). N.E.C.A. asserts that it calculated the requested interest amount "using a simple interest formula with the published quarterly IRS underpayment rates from January 1, 2020, through July 13, 2026." Renewed Mot. Default J. ¶ 11. N.E.C.A. provides the Court with no indication that the CBA outlined the interest rate to be applied. *See generally id.* As such, the statute notes that if the relevant plan does not specify the interest rate, 26 U.S.C. § 6621, which outlines how the Treasury Secretary should set the IRS underpayment rates, should be used. 29 U.S.C. § 1132(g). The Court is satisfied that it was appropriate for N.E.C.A. to apply the IRS underpayment and with N.E.C.A.'s calculations. Interest Calculation, Renewed Mot. Default J. Ex. B, ECF No. 27-2. As such, the Court grants N.E.C.A.'s requested $8,867.36 in interest on unpaid contributions under 29 U.S.C. § 1132(g)(2)(B).

N.E.C.A. requests $4,762.13 in liquidated damages, an amount constituting twenty percent of the unpaid contributions, noting that the liquidated damages policy under the CBA would result in an award in excess of twenty percent of the delinquent contributions. *See* Renewed Mot. Default J. ¶ 12. As the earliest unpaid contributions stem from 2019, *see* Audit Inspection Finding 1 (discussing unpaid contributions from 2019), the Court agrees that the

liquidated damages provision in the CBA—which provides for damages of $50.00 "per day for each working day the reports and contributions are delinquent," Residential Wiring Agreement ("CBA") § 4.09,[3] Mem. L. Supp. Audit Ex. A, ECF Nos. 8, 8-1—would exceed ERISA's cap, *see* 29 U.S.C. § 1132(g)(2)(C). Even if only one year late, $50.00 per day would amount to over $12,000.00 in liquidated damages, which far exceeds the twenty percent cap set by ERISA. Thus, twenty percent of the unpaid contributions is the appropriate amount and the Court grants N.E.C.A.'s requested liquidated damages. *See, e.g.*, *Trs. N.E.C.A./Loc. 145 I.B.E.W. Pension Plan v. Mausser*, No. 4:18-cv-04045-SLD-JEH, 2023 WL 6200057, at *5 (C.D. Ill. Sep. 22, 2023); *Operating Eng'rs Loc. 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 654 (7th Cir. 2001) (presenting a plaintiff's ability to recover interest or liquidated damages under 29 U.S.C. § 1132(g)(2)(C) as a choice plaintiffs may make); *see also Ind./Ky./Ohio Reg'l Council of Carpenters Pension Fund v. JC&C Builders, LLC*, No. 1:24-CV-02012-JRO-MJD, 2026 WL 1749447, at *3 n.3 (S.D. Ind. June 17, 2026).

**iii. Attorneys' Fees and Costs**

Finally, N.E.C.A. requests attorneys' fees and costs in the amount of $4,578,37 and $2,414.70 for the costs of the audit. Renewed Mot. Default J. ¶ 13. ERISA allows fiduciaries to recover "reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g)(2)(D).

To calculate fees in ERISA cases, courts use the lodestar method—reasonable hourly rate multiplied by the number of hours reasonably expended. *See Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (applying the lodestar method to an ERISA case). The reasonable hourly rate is to be judged "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The best evidence of the

[3] N.E.C.A. relies on § 2.26(B) of the CBA, Renewed Mot. Default J. ¶ 12; however, there is no § 2.26. *See generally* CBA. Based on the Court's independent review, it determined that the appropriate section is § 4.09.

market rate is the amount the attorney actually bills for similar work." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). "[I]f that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id.* The fee applicant "bears the burden of establishing the market rate for the work." *Id.*

N.E.C.A.'s attorney, Michael Halpin, from the firm McCarthy Callas & Feeney, P.C. provides the Court with a timesheet, which shows a total of 14.75 hours expended at $275.00, requesting a total $4,578.37 in fees and costs. *See generally* Att'y Fees & Costs, Renewed Mot. Default J. Ex. C, ECF No. 27-3. Attorney Halpin provides no affidavit regarding the requested attorneys' fees and costs. This complete lack of information creates several issues. The timesheet includes entries from Abbey Lieser and Nancy Patterson, but Halpin has provided no affidavit or other information about who these people are. Due to this absence of information, the Court declines to grant any fees and costs associated with their entries. Halpin has provided no evidence about what he charges for similar work, what similarly experienced attorneys charge other clients for similar work, or of rates generally charged in the community. Despite this incomplete information, however, the Court can determine the reasonable rate itself. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) ("If a fee applicant does not satisfy its burden [of producing satisfactory evidence beyond an attorney's affidavits that the requested rates are reasonable], the district court has the authority to make its own determination of a reasonable rate."). Courts within the Central District of Illinois have previously found reasonable rates between $195.00 and $233.00. *Plumbers & Pipefitters Loc. Union No. 25 Welfare Fund v. Hirst Plumbing & Mech. Servs., Inc.*, No. 4:24-cv-04220-SLD, 2025 WL 1208929, at *5 (Apr. 25, 2025) (collecting cases). Because N.E.C.A. provides no information

about Halpin's experience or the other individuals on the timesheet, the Court does not find that the requested rate of $275.00 an hour is reasonable and instead adjusts the rate to $233.00 an hour. *See id.* (adjusting a requested hourly rate of $273.00 to $233.00 when the plaintiff provided no information about reasonable rates or attorney experience). Accordingly, the Court awards $3,436.75 in attorneys' fees. The Court also grants the requested costs associated with certified mail entered by Halpin, totaling $20.12.

N.E.C.A. also requests $2,414.70 for the cost of the audit. Renewed Mot. Default J. ¶ 13. Although the statute does not specifically authorize audit fees, it does provide for awarding "costs of the action," 29 U.S.C. § 1132(g)(2)(D), and "such other legal or equitable relief as the court deems appropriate," *id.* § 1132(g)(2)(E). The Court is satisfied with N.E.C.A.'s documentation supporting its request. *See* Audit Invoices, Renewed Mot. Default J. Exs. D & E, ECF Nos. 27-4 & 27-5. As such, the Court grants N.E.C.A.'s $2,414.70 request for the audit costs.

**CONCLUSION**

Accordingly, Plaintiff Trustees of the N.E.C.A./Local 145 I.B.E.W. Pension Plan, as Collection Agent for all Fringe Benefits's ("N.E.C.A.") renewed motion for default judgment, ECF No. 27, is GRANTED IN PART and DENIED IN PART. Plaintiff is GRANTED $43,311.74 in monetary damages. N.E.C.A.'s motion to withdraw its request for permanent injunction, ECF No. 29, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 30th day of September, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE